UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERT H.,[1]<br><br>    Plaintiff<br><br>    v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>    Defendant. | Case No. 2:20-cv-04922-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.   PROCEDURAL HISTORY

Plaintiff Bert H. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 5 and 11] and briefs addressing disputed issues in the case [Dkt. 18 ("Pl. Br.") and Dkt. 21 ("Def. Br.").] The matter is now ready for decision. For the reasons discussed below, the Court finds that this matter should be affirmed.

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On April 19, 2016, Plaintiff filed his applications for SSI and DIB alleging disability based on a variety of issues including a history of above-knee left leg amputation stemming from a motorcycle accident in 2000 and a total right knee replacement in 2016. [Dkt. 15, Administrative Record ("AR").] Plaintiff's applications were denied initially, on reconsideration, and after a hearing before Administrative Law Judge ("ALJ") Ben Willner. [AR 1-6, 15-29.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2017, the alleged onset date. [AR 18.] At step two, the ALJ found that Plaintiff had the following severe impairments: lower extremity amputation of the leg above the knee; residual effects status-post surgery of a right knee replacement; degenerative joint disease of the right knee; diabetes mellitus, Type II; and obesity. [AR 18.] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 20-23.]

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work. [AR 23.] Applying this RFC, the ALJ found at step four that Plaintiff could perform his past relevant work as a telephone solicitor and thus he is not disabled. [AR 27.] Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. [AR 1-6.] This appeal followed.

## III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec.*

*Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

### IV. DISCUSSION

Plaintiff raises the following arguments: (1) the ALJ erred in failing to find he met or equaled Listings 1.02, 1.03 or 1.05 (ambulatory joint disorders); and (2) the ALJ's finding that he could perform his past relevant work is not supported by substantial evidence. [Pl. Br. at 4-8.] The Commissioner asserts that the ALJ's decision should be affirmed. [Def. Br. at 1-15.]

**A. The ALJ Did Not Err at Step Three**

Plaintiff first contends the ALJ erred at Step Three in failing to find he met Listings 1.02, 1.03, or 1.05 alone or in combination which generally covers disabilities based on major dysfunction of a joint and the inability to ambulate effectively. Plaintiff argues that there is sufficient evidence to show that he meets the requirements of either of these Listings because "the record as a whole demonstrates that [he] had an inability to ambulate effectively before and after his

3

total right knee replacement in November 11, 2016." (Pl. Br at 5.) According to Plaintiff, the medical evidence as a whole demonstrates that (1) he requires a wheelchair which undermines the ALJ's findings that he can ambulate effectively and (2) the orthopedic Consultative Examiner found that he required a wheelchair to ambulate and that he cannot stand and walk. Plaintiff further alleges that even if he can ambulate with a prosthetic on his left leg the record establishes that he cannot ambulate effectively when considering his left-leg amputation in combination with his total right-knee replacement, which amounts to two lower extremity impairments. (Pl. Br. at 5.)

In response, Defendant argues the medical evidence supported the ALJ's step three finding because Plaintiff did not satisfy the regulatory definition of "inability to ambulate effectively." (Def.'s Br. at 4-10.) Specifically, Defendant argues that the record fails to establish that Plaintiff was unable to ambulate effectively for a medical reason for a 12-month period, two requirements needed to establish that Plaintiff meets the purported Listings.

### 1. Legal Standard

At step three in the sequential process, an ALJ must consider whether a claimant's conditions meet or equal any of the impairments outlined in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). The listings describe impairments that "would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). If a claimant's "impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *see also* 20 C.F.R. § 404.1520(d). The claimant bears the burden of establishing a prima facie case of disability under the listings. *See Thomas v. Barnhart,* 278 F.3d 947, 955 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1520(a)(4)(iii).

An impairment meets a listing when all the medical criteria required of that listing is satisfied. 20 C.F.R. § 404.1525(c)(3); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) ("To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim.'). "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment. . . ." *Id.* at 1099 (quoting 20 C.F.R. § 404.1526(a)).

"If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Id.* (citing 20 C.F.R. § 404.1526(a)). However, "[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three.'" *Id.* at 1100 (quoting 20 C.F.R. § 404.1526(a))

**2. Listings 1.02, 1.03 and 1.05**

The relevant portions of Listings 1.02, 1.03 and 1.05 provide as follows:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> . . . .
>
> 1.03 Reconstructive surgery or surgical arthrodesis of a major weight-

> bearing joint, with inability to ambulate effectively, as defined in
> 1.00B2b, and return to effective ambulation did not occur, or is not
> expected to occur, within 12 months of onset.
>
> . . . .
>
> 1.05 Amputation (due to any cause) of (B) One or both lower
> extremities at or above the tarsal region, with stump complications
> resulting in medical inability to use a prosthetic device to ambulate
> effectively, as defined in 1.00B2b, which have lasted or are expected to
> last for at least 12 months.

Listings 1.02, 1.03, 1.05.

Section 1.00(B)(2)(b), a necessary finding common to Listings 1.02, 1.03, and 1.05, defines "inability to ambulate effectively as follows:

> (1) Definition. Inability to ambulate effectively means an extreme
> limitation of the ability to walk; *i.e.*, an impairment(s) that interferes
> very seriously with the individual's ability to independently initiate,
> sustain, or complete activities. Ineffective ambulation is defined
> generally as having insufficient lower extremity functioning (see 1.00J)
> to permit independent ambulation without the use of a hand-held
> assistive device(s) that limits the functioning of both upper extremities.
> (Listing 1.05C is an exception to this general definition because the
> individual has the use of only one upper extremity due to amputation of
> a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a
> reasonable walking pace over a sufficient distance to be able to carry
> out activities of daily living. They must have the ability to travel
> without companion assistance to and from a place of employment or
> school. Therefore, examples of ineffective ambulation include, but are
> not limited to, the inability to walk without the use of a walker, two
> crutches or two canes, the inability to walk a block at a reasonable pace
> on rough or uneven surfaces, the inability to use standard public
> transportation, the inability to carry out routine ambulatory activities,
> such as shopping and banking, and the inability to climb a few steps at
> a reasonable pace with the use of a single hand rail. The ability to walk
> independently about one's home without the use of assistive devices
> does not, in and of itself, constitute effective ambulation.

6

Listing 1.00(B)(2)(b).

### 3. Analysis

Here, the ALJ considered whether Plaintiff's amputation and total knee replacement met or equaled several Listings including those under 1.02, 1.03 and 1.05. [AR 20.] The ALJ concluded that they did not, citing reasons including that Plaintiff "demonstrated the ability to ambulate effectively with the use of a prosthetic device." [AR 22.] In reaching this conclusion, the ALJ discussed the inconsistencies between Plaintiff's testimony stating that he was constricted to the use of a wheelchair and essentially unable to use a prosthetic device with the record evidence demonstrating that Plaintiff used a prosthetic device to ambulate. [AR 22.]

At the outset, the ALJ acknowledged that throughout the record Plaintiff used both a wheelchair and a prosthetic device. The ALJ, however, noted that Plaintiff's intermittent use of a wheelchair was not for a medically necessary reason, but was a result of Plaintiff's incarceration. [AR 21.] The record indicates that from February 2014 through November 2015, Plaintiff used a wheelchair at times while he was housed at Corcoran State Prison because the prison took away his prosthesis. [AR 24, 312.] In further considering Plaintiff's use of a prosthesis, or lack thereof, the ALJ also considered the statements of Vincente Bernabe, M.D. who performed an orthopedic consultative examination in July 2016 and stated that Plaintiff "is confined to a wheelchair" and "he cannot stand and walk." [AR 366.] The ALJ however discounted Dr. Bernabe's opinion, in part, because he based his opinion on Plaintiff's statement that he did not have *any* prosthesis. [See AR 360 ("he does not have any prosthesis") and 366 ("does not have an above knee amputation prosthesis and is confined to a wheelchair.") The ALJ found that the subjective statement provided to Dr. Bernabe by Plaintiff contradicted ample other evidence in the record that Plaintiff both has and uses a prosthesis. [AR 24.] The ALJ noted that despite Plaintiff's statement to Dr. Bernabe and at the administrative hearing that he was confined to a wheelchair, "the record indicates that [Plaintiff] was not medically

7

constricted to a wheelchair, and it was only upon [Plaintiff's] request that his physician ordered him a wheelchair. Similarly, by Plaintiff's own account, he only began the use of a wheelchair because his prosthetic device was stolen, and he only remained in the wheelchair because he failed to have it replaced due to alleged insurance issues." [AR 24.] The ALJ also concluded that more recent evidence in the record demonstrated that shortly before the administrative hearing "Dynamics Orthotics & Prosthetics, Inc. fit [Plaintiff] for a customized transfermoral prosthesis" and Plaintiff "reported upon his fitting that the socket fit well." [AR 24.]

While Plaintiff challenges the above findings, Plaintiff's arguments fail for several reasons. First, Plaintiff points to a 2016 medical record to argue that he was unable to ambulate effectively using his left-leg prosthesis once he had surgery on his right knee. Specifically, Plaintiff contends that the record demonstrates that "one month after his right knee replacement" he fell while trying to pull on his left-leg prosthesis. [AR 565.] However, Plaintiff does not discuss how his most recent medical records, many of which were addressed by the ALJ, show an inability to ambulate effectively. Although the 2016 medical record identified by Plaintiff notes that he opened his surgical wound when he fell in 2016 (AR 565 and 617), more recently, Plaintiff noted that his right knee felt stable and his physician recommended that he "try to use a prosthesis on the left leg" in February 2017. [AR 721]. On March 20, 2017, he was seen at the hospital for abdominal pains, but his physical examination was otherwise unremarkable: he had a normal range of motion, no tenderness in his extremities, and his "right total knee replacement wound appeared to be clean, dry and intact," and his "left above-the-knee amputation also appeared to be a 'well healed wound.'" [AR 436, 486, 830, and 844.]

The ALJ evaluated this evidence, noting Plaintiff's former challenges with the use of his prosthetic device, but ultimately relied on the evidence demonstrating that "immediately prior to the hearing [Plaintiff] was fitted for customized transfemoral

8

prosthesis without any further difficulties reported." [AR 21.] The record further indicated that the reason Plaintiff underwent total knee replacement surgery in November 2016 was "for the purpose of walking with a prosthesis on his left leg." [AR 686.] Following that surgery and subsequent physical therapy, care providers fitted Plaintiff for bilateral orthopedic shoes in early 2018 demonstrating that he had continued to walk using both his right knee and his prosthesis on his left leg following his 2016 surgery. [AR 1031.] Thus, the isolated evidence presented by Plaintiff fails to demonstrate that his brief problems walking with his prosthesis after knee surgery resulted in an extreme limitation that lasted consistently for twelve months. *See Connors v. Colvin*, 656 Fed.Appx. 808, 810 (9th Cir. 2016) (unpublished) (in the context of the rheumatoid arthritis listing, which references § 1.00B.2.b definition of "inability to ambulate effectively": "Because [claimant's] walker was prescribed for 'periodic use' and because [claimant] claims to need the walker only 'at times,' she cannot show an 'extreme limitation of the ability to walk'").

Second, the Court is not persuaded by the crux of Plaintiff's latter argument that the ALJ should have adopted Dr. Bernabe's opinion and/or Plaintiff's self-reports that he is incapable of ambulating without a wheelchair. To warrant a finding of disability at Step Three of the sequential disability evaluation process, the impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. Furthermore, it must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." 20 C.F.R. § 404.1508; *see also* Social Security Ruling ("SSR") 96-8p, 1996 SSR LEXIS 5, *3-4, 1996 WL 374184, at *2 (determination that is conducted at step three must be made on basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 SSR LEXIS 24, *3,

1983 WL 31248, at *2.

As set forth by the ALJ, the record lacks medical evidence demonstrating that Plaintiff did not have any prosthesis and that his impairments resulted in an inability to ambulate using his prosthesis. The ALJ properly rejected the only medical opinion indicating that Plaintiff was confined to a wheelchair. Thus, neither Dr. Bernabe's opinion nor Plaintiff's subjective complaints constitutes objective medical evidence of an inability to ambulate effectively. *See Veniale v. Colvin*, 2014 U.S. Dist. LEXIS 39487, 2014 WL 1246135, at *2 (C.D. Cal. Mar. 24, 2014) (affirming ALJ's finding that claimant was not disabled under Listing 1.02(A) where the ALJ found there was no medical evidence "to establish that [claimant's] knee osteoarthritis was sufficiently serious to require the use of a wheelchair or any other assistive device"); *Hamilton v. Astrue*, 2010 U.S. Dist. LEXIS 99014, 2010 WL 3748744, at *7 (C.D. Cal. Sept. 22, 2010) ("Plaintiff's self-reports of symptoms and functional limitations based on hip and joint pain cannot suffice to raise the severity of her related impairment to that of Listing 1.02(A).").

Finally, Plaintiff has not shown that he was incapable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living, *i.e.*, the regulatory definition of effective ambulation. As the ALJ noted, Plaintiff's daily activities evidenced his ability to ambulate effectively. The ALJ reiterated Plaintiff's testimony regarding "his ability to use public transportation to travel places for shopping and other daily needs, which is an example of the ability to ambulate effectively." [AR 21.] Because the record fails to establish that Plaintiff was unable to ambulate effectively for a medical reason for a 12-month period, he has not demonstrated that his impairments are equivalent to a listed impairment. As it is Plaintiff's burden to establish that he equals a Listing, Plaintiff's request for remand for a medical expert to provide an "updated" exam and analyze all of the evidence with the hope of establishing that a combination of his impairments meets or equals a Listing is insufficient to meet this burden.

Given Plaintiff's demonstrated ability to ambulate effectively with a prosthetic device, Plaintiff's severe impairment does not satisfy Listings 1.02, 1.03 or 1.05 and the ALJ's step three finding is supported by substantial evidence and is free of legal error.

**B.  Substantial Evidence Supports the ALJ's Step Four Finding**

As a final matter, Plaintiff argues that the ALJ's finding that he could perform his past relevant work is not supported by substantial evidence. [Pl.'s Br. at 6-7.] Specifically, Plaintiff argues that because the ALJ failed to credit his subjective testimony that he is "wheelchair bound" and cannot stand or walk "as found by the orthopedic Consultative Examiner" the ALJ erroneously found that he could perform his past relevant work. (Pl.'s Br. at 6.) The Court again disagrees with Plaintiff's position.

Plaintiff's contention that the ALJ's step four finding is flawed essentially restates his argument that the ALJ improperly rejected his subjective statements made to the consultative examiner. Plaintiff does not argue that the hypothetical posed to the VE failed to include all the limitations found in his RFC, instead Plaintiff contends that he "cannot stand or walk per the orthopedic" evaluation and therefore the ALJ should have questioned the vocational expert on the preclusion of his past relevant work "due to an inability to stand and walk." (Pl. Br. at 6.) However, an ALJ is not obliged to accept as true limitations alleged by Plaintiff and may decline to include such limitations in the vocational expert's hypothetical if they are not supported by sufficient evidence. *See Martinez v. Heckler*, 807 F.2d 771 (9th Cir. 1986); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Hall v. Colvin*, No. CV-13-0043, 2014 U.S. Dist. LEXIS 45006, at *24-25 (E.D. Wash. Mar. 31, 2014)("A claimant fails to establish that a Step 5 determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected.")

As discussed above, the ALJ rejected Plaintiff's subjective statements that he is restricted to a wheelchair and that he cannot stand or walk based on ample evidence in the record to the contrary. The ALJ then formulated an RFC based on the limitations he found credible and supported by the objective evidence. Because substantial evidence supports the ALJ's RFC finding, the hypothetical posed to the VE properly encompassed all of Plaintiff's limitations, and in turn, the ALJ did not err in concluding that Plaintiff can perform his past relevant work. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) ("In arguing the ALJ's hypothetical was incomplete, [the claimant] simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts. As discussed above, we conclude the ALJ did not."); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ("It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record").

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: July 6, 2021

GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

12